1
2
3
4
5
6
7
8                         UNITED STATES DISTRICT COURT

9                        SOUTHERN DISTRICT OF CALIFORNIA

10
|                                                  |                          |
11  BRIAN DEVERICK LEWIS,              )        Civil No.04cv2468-JLS (NLS)
                                        )
            Plaintiff,                  )        **REPORT AND RECOMMENDATION**
12  v.                                  )        **TO GRANT MOTION TO COMPEL**
                                        )        **DISCOVERY AND FOR**
13  S. RYAN, et al.,                    )        **EVIDENTIARY SANCTIONS**
                                        )
14            Defendants.               )        **[Docket No. 152]**
                                        )
15  _____    )

16

17                              ᴮ**ACKGROUND**

18         Plaintiff has filed a civil rights complaint pursuant to 42 U.S.C. § 1983 and the Religious Land

19  Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-2000cc-4, in which he alleges

20  that various defendants violated his First and Eighth Amendment rights by surreptitiously feeding him

21  pork in the prison cafeteria, an infringement of his religious beliefs as a follower of Islam, causing him

22  subsequently to suffer severe emotional distress.   The Complaint was filed on December 10, 2004 and

23  defense counsel executed a waiver of service on April 15, 2005.  (Docket No. 8.)

24         On August 17, 2006, Plaintiff propounded Requests for Production of Documents on Defendant

25  Vorise (Docket No. 58-2 Ex. C, the "RFPs".)  On December 20, 2006, Plaintiff filed a Motion to

26  Compel Discovery based in part on the RFPs.  (Docket No. 58.)  Plaintiff sought documents relating to

27  the serving of a pork product in October of 2003 and documents relating to ordering, invoices, and

28  inventory of meat products.  (*Id.*)  On January 18, 2007, Defendants asserted in Opposition to the

                                              1

Motion to compel that they "will also conduct a further search of their records and, without waiving any previously asserted objections, supplement Defendant Vorise's Responses to Plaintiff's Requests for Production of documents with any and all non-privileged documents responsive to those requests." (Docket No. 67.)[1]  On  February 1, 2007, this court issued an Order Granting Plaintiff's Motion to Compel Discovery.  (Docket. No. 69 "The Discovery Order").  The Discovery Order specifically required Defendant Vorise, no later than February 15, 2007, to "supplement his previous production with any and all non-privileged documents that are responsive to Plaintiff's requests."  (*Id.* at pp. 5-6.)

On July 7, 2007, Defendants filed a Motion for Summary Judgment.  (Docket No. 84.)  On March 6, 2008, this court issued a Report and Recommendation ("R&R") on Defendants' Motion for Summary Judgment, recommending that the motion be granted in part and denied in part.  (Docket No. 103).   On May 1, 2008, Judge Sammartino adopted the R&R in the belief that Plaintiff had filed no objections. (Docket No. 106).  On May 29, 2008, Plaintiff filed a Motion for Reconsideration of the Order adopting the R&R, stating that he had timely provided  prison officials with his objections with instructions to mail the objections.  On November 17, 2008, Judge Sammartino granted Plaintiff's Motion for Reconsideration, finding that, in light of his *pro se* status, Plaintiff had met the requirements of  Fed. R. Civ. P. 56(f) in designating evidence sought that would preclude summary judgment. (Docket No.  136).  The order directed the undersigned Judge to hold a discovery conference and extend discovery to "ensure that Defendants receive and respond appropriately to Plaintiff's discovery requests before refiling their motion for summary judgment."  (*Id.*)  Pursuant to that Order, a telephonic discovery conference was held on January 21, 2009.  Mr. Sheehy appeared on behalf of Defendants and Mr. Lewis appeared on his own behalf.

On January 21, 2009, the court Ordered Defendants to comply with the Discovery Order granting Plaintiff's motion to compel, to properly respond to Plaintiff's outstanding discovery requests, and to file a  declaration of compliance setting forth the documents produced and the efforts made to locate responsive documents.  (Docket No. 138 the "Discovery Conference Order".)   The Court

---

[1]Defendants' responses to the Requests for Production of Documents are not included in the record.  Defendants have not indicated whether they produced any documents with their original response to the Requests for Production of Documents.

04cv2468-JLS (NLS)

specifically found that Defendants had failed to "comply with the spirit" of the earlier Discovery Order in responding to the Requests for Production of Documents.  (*Id.* at p. 4.)  While Defendants did provide a timely response, the response was so woefully inadequate as to constitute no response at all.  (Docket No. 98, Opposition to Summary Judgment, Exh. K.)  In response to Request for Production of Document Number 3, seeking order invoices for meat products, Defendants responded: "a diligent search of Calipatria's records is being conducted and documents responsive to this request for the appropriate time period will be produced if available."  (*Id.*)  The response to Request numbers 5-10, 12 and 15 is substantially the same - that a search "is being conducted."  In short, instead of complying with the Discovery Order's requirement to supplement the production, Defendants merely stated that " a search is being conducted."  Defendants have pointed to no evidence that any search was, in fact, conducted at that time and have pointed to no documents that were produced.  Due to the lack of true compliance with the Discovery Order, the Discovery Conference Order required a declaration from the person most knowledgeable stating the number of documents produced and the efforts made to locate the responsive documents.  (Discovery Conference Order at 4.)

 The Court also required Defendants to respond to outstanding discovery requests.  (Docket No. 98, Exh. L.)  Included in the outstanding requests was a Request for Production propounded on March 16, 2007, seeking all documents relating to food delivered to Calipatria and all documents pertaining to pork products being served erroneously within the California Department of Corrections.  (*Id.*)

On February 11, 2009, Defendants filed two declarations of compliance, one from Defendant Mitchell, and one from attorney Terrence Sheehy.  (Docket Nos. 142, 143.)  Defendant Mitchell declared that he has been the Correctional Food Manager at Calipatria State Prison for eleven years and that "my secretary and I spent several hours, over several days, searching our current files and older files here in the food services area, for any documents responsive to Plaintiff's discovery requests."  (Docket No. 143 at ¶¶ 1, 3).  Defendant Mitchell stated that the search did not produce any responsive materials "mostly because the time periods sought are well out of the range of Calipatria's retention schedule, and all materials for those time periods have been destroyed."  (*Id.* at ¶ 4.)  Mitchell also attached the retention schedule that reveals that most documents are supposed to be kept either two or three years. (*Id.* at attachment, the "Retention Schedule".)  This was the first time that defendants indicated that

1  responsive documents had been destroyed.

2      On April 13, 2009, Plaintiff filed the Second Motion to Compel Discovery and Request for

3  Sanctions that is presently before the Court.  For the following reasons, the Motion to Compel and for

4  Sanctions is GRANTED.

5                                  DISCUSSION

6      **A.    Legal Standards**

7          1.    Duty to Preserve Evidence

8      Federal courts have recognized a party's duty to preserve evidence when it knows or reasonably

9  should know the evidence is relevant and when prejudice to an opposing party is foreseeable if the

10  evidence is destroyed.  *Kronisch v. United States*, 150 F.3d 112, 130 (2d Cir. 1998)*; see also World*

11  *Courier v. Barone*, 2007 WL 1119196 at * 1 (N.D. Cal. Apr 16, 2007).  Once the duty to preserve

12  attaches, a party must "suspend any existing policies related to deleting or destroying files and preserve

13  all relevant documents related to the litigation.  *In re Napster, Inc. Copyright Litigation*, 462 F.Supp.2d

14  1060, 1070 (N.D. Cal. Oct 25, 2006), *citing Zubulake v. UBS Warburg LLC,* 220 F.R.D. 212, 218

15  (S.D.N.Y. 2003) ("Once the duty to preserve attaches, any destruction of documents is, at a minimum,

16  negligent.").  The Court's authority to sanction a party for spoliation of evidence arises from both its

17  inherent power to impose sanctions in response to litigation misconduct and from Rule 37 under which

18  sanctions are available against a party "who fails to obey an order to provide or permit discovery."  *See*

19  Fed.R.Civ.P. 37(b)(2)(C).

20          2.    Rule 37

21      Rule 37 provides that where a party fails to comply with a court order, a court may "prohibit[ ]

22  the disobedient party from supporting or opposing designated claims or defenses, or from introducing

23  designated matters in evidence."  Fed.R.Civ.P. 37(b)(2)(A)(ii).  Sanctions for violations of Rule 37, may

24  be imposed for negligent conduct.  *See* Fed.R.Civ.P. 37(b); *Fjelstad v. American Honda Motor Co., Inc*.,

25  762 F.2d 1334, 1343 (9th Cir. 1985); *Hyde & Drath v. Baker*, 24 F.3d 1162, 1171 (9th Cir. 1994).  The

26  lack of bad faith does not immunize a party or its attorney from sanctions, although a finding of good or

27  bad faith may be a consideration in determining whether imposition of sanctions would be unjust and

28  the severity of the sanctions.  *See Hyde & Drath*, 24 F.3d at 1171.  The most drastic sanction, dismissal,

1  generally requires a finding that the conduct was "due to willfulness, bad faith or fault of the party."  *In*

2  *re Phenylpropanolamine (PPA) Products Liability Litig.*, 460 F.3d 1217, 1233 (9th Cir. 2006).  This

3  standard is met by "[d]isobedient conduct not shown to be outside the litigant's control."  *Fair Housing*

4  *of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002); *Jorgensen v. Cassiday*, 320 F.3d 906 (9th Cir.

5  2003).  Moreover, a party's destruction of evidence qualifies as willful spoliation if the party has "some

6  notice that the documents were potentially relevant to the litigation before they were destroyed." *Leon v.*

7  *IDX Sys., Corp.* 464 F.3d 951, 959 (9th Cir. 2006), *quoting United States v. Kitsap Physicians Serv.*, 314

8  F.3d 995, 1001 (9th Cir. 2002)(other citations omitted.)  Finally, "[b]elated compliance with discovery

9  orders does not preclude the imposition of sanctions."  *Id., quoting North American Watch Corp. v.*

10  *Princess Ermine Jewels*, 786 F.2d 1447,1451 (9th Cir. 1986); see also *G-K Properties v. Redevelopment*

11  *Agency of City of San Jose*, 577 F.2d 645, 647-48 (9th Cir. 1978).

12        The Ninth Circuit has developed a five part test to evaluate whether a dismissal sanction under

13  Rule 37 is just:

14
15      (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the [party seeking sanctions]; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less
16  drastic sanctions.

17  *Valley Engineers, Inc. v. Electric Engineering Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998).  The third and

18  fifth factors, prejudice and availability of less drastic sanctions, are the decisive factors.  *Id.* (noting that

19  factor numbers one and two favor, and number four cuts against, case dispositive sanctions).

20                 3.    <u>Inherent Authority of the Court</u>

21        The inherent power of the Court extends beyond those powers specifically created by statute or

22  rule, and encompasses the power to sanction misconduct by the attorneys or parties before the Court.

23  *See, e.g. Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991) (holding that federal courts have the

24  inherent power to "fashion an appropriate sanction for conduct which abuses the judicial process.").

25  Sanctions pursuant to a court's inherent authority are appropriate upon a finding of  "recklessness when

26  combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Fink v.*

27
28

1    *Gomez*, 239 F.3d 989, 994 (9th Cir. 2001).[2]  Dismissal sanctions under a court's inherent power may be

2    imposed upon a finding of willfulness, fault or bad faith.  *See Leon v. IDX Systems Corp.*, 464 F.3d 951,

3    958 (9th Cir. 2006).  Before imposing dismissal sanctions,

4

5    > [a] district court must determine (1) the existence of certain extraordinary circumstances,
>    (2) the presence of willfulness, bad faith, or fault by the offending party, (3) the efficacy

6    > of lesser sanctions, (4) the relationship or nexus between the misconduct drawing the
>    dismissal sanction and the matters in controversy in the case, and finally, as optional
>    considerations where appropriate, (5) the prejudice to the party victim of the misconduct,

7    > and (6) the government interests at stake.

8    *Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 380 (9th Cir.1988).  Dismissal is only warranted in "extreme

9    circumstances" and "to insure the orderly administration of justice and the integrity of the court's

10   orders."  *Id.*  Courts may only impose terminating sanctions when no lesser sanction is adequate to cure

11   the prejudice from the offending conduct.  *In re Napster, Inc. Copyright Litigation*, 462 F.Supp.2d 1060,

12   1072 (N.D. Cal. 2006).

13   **B.**     **Destruction of Documents**

14         This lawsuit involves an allegation that pork was served to inmates with a religious objection in

15   October of 2003.  Defendants received notice of the lawsuit no later than April 15, 2005, less than two

16   years after the relevant time period.  Plaintiff propounded Requests for Production of Documents in

17   August of 2006, less than three years after the relevant time period.  In January of 2007, Defendants

18   opposed a motion to compel discovery with the claim that they are looking for documents.  In February

19   of 2007, the Court ordered Defendants to produce the documents sought and, remarkably, Defendants

20   again responded only with a claim that they were looking for the documents.  Despite these alleged

21   searches and the fact that it was after the time frame for normal destruction of documents, Defendants

22   never mentioned the possibility that the documents may be have been destroyed.  Only in 2009, after

23   being ordered to file a declaration under penalty of perjury, did Defendants allege that no documents

24

25         [2]The Ninth Circuit has never adopted a "clear and convincing" burden of proof for the
imposition of sanctions under the inherent authority of the court.  *In re Napster, Inc. Copyright

26   Litigation*, 462 F.Supp.2d 1060, 1072 (N.D. Cal. 2006)(declining to adopt clear and convincing standard
of proof for sanctions for spoliation of evidence.)  The court is aware of *Shepherd v. American

27   Broadcasting Cos. Inc.* 62 F.3d 1469 (D.C. Cir. 1995) adopting the clear and convincing standard.
Because the court finds clear and convincing evidence that sanctions are warranted, the Court need not

28   reach the question of whether the heightened standard of proof is required.

1   were available because Defendants had destroyed them.  The retention policy, however, indicates that

2   many of the documents would have been in Defendants' possession when Defendants were served with

3   notice of the lawsuit and when Plaintiff propounded his first set of Requests for Production of

4   Documents.

5          A few examples suffice to show that destruction in the ordinary course in no way excuses

6   Defendants' failure to produce these documents.  First, Plaintiff  sought in the RFPs: "Copies of any and

7   all food requests and order invoices for all meat products ordered by California State Prison food

8   department beginning from January 1, 2001 to October 14, 2003."  (Request No. 3, the RFPs).

9   Similarly, Plaintiff also sought "Copies of the all contacts transaction forms [sic] between Sysco Foods

10  Service of San Diego and Calipatria State Prison from January 1, 2002 through October 14, 2003.

11  (Request No. 15, the RFPs.)  The Retention Schedule states that all "contracts, bids, order and receipt

12  records of food purchases" are to be kept in the office for three years after the contract is complete or the

13  item is received.  (Retention Schedule Item #8.)  Accordingly, these records should have been in the

14  office until at least October of 2006, two months after Plaintiff propounded Requests for Production of

15  Documents seeking the records.

16         Second, Plaintiff sought: "Copies of all memorandums circulated by C.S.P. food service

17  department after October 14, 2003 concerning pork products." (Request No. 6, the RFPs).  The retention

18  policy states that Memos will be retained in the office for three years.  (Retention Schedule  Item No.

19  54).  Accordingly, the records should have been kept in the office until October 14, 2006 - almost two

20  months after the Request for Production of Documents was served upon Defendants.

21         Third, Plaintiff sought: "Copies of the meal report for October 14, 2003 and October 29, 2003."

22  (Request No. 8, the RFPs.)  The Retention policy states that all Meal Sample Reports are to be retained

23  in the office for two years and in the department for an additional year.  (Retention Schedule Item No.

24  15.)  Accordingly, these reports should have been in Defendants' possession until October of 2006.

25         Fourth, Plaintiff sought "Copies of the automated food manager program report for June 2003

26  through December 31, 2003" (Request No. 12, the RFPs.)  The Retention Schedule states that the

27  Automated Food Program records are to be retained for three years electronically on diskette in the

28  office and a backup in the Associate Information Systems Analyst Office.  In August of 2006, when

1   Defendants were served with this discovery, the records from August through December 2003 should

2   have existed in not one, but two places.

3          As these examples show, many of the documents Plaintiff sought were not yet scheduled for

4   destruction when Defendants were put on notice of their relevance.  Indeed, many of the documents

5   were not scheduled for destruction when Defendants were served with Plaintiff's Request for Production

6   of Documents seeking them.

7          Defendants oppose the motion for sanctions, arguing that "other than unsupported allegations,

8   Plaintiff has not shown that Defendant Vorise has acted in bad faith."  (Opp. at 2.)  Defendants'

9   argument misses the mark because bad faith is not required for sanctions.  Moreover, Defendants fail to

10  make any argument that would render their conduct in compliance with the Discovery Order or their

11  duty to preserve relevant evidence.  Indeed, Defendants fail to explain how their conduct was not, at

12  least, reckless and grossly negligent.   Defendants do not explain how documents that they knew were

13  relevant to this litigation were destroyed.  Defendants do not explain what efforts, if any, they took to

14  make sure that relevant documents were not destroyed during the ordinary course of business.

15  Defendants do not explain how they could have complied with their obligation to conduct a reasonable

16  search for documents and yet failed to find the documents before they were destroyed.  Defendants do

17  not explain how they could have complied with the Discovery Order by merely stating that they were

18  looking for the documents.  Finally, Defendants do not explain how, if they had conducted a reasonable

19  search, they could have failed to discover either the documents or the fact of their destruction.[3]

20         A party's destruction of evidence qualifies as willful spoliation if the party has "some notice that

21  the documents were potentially relevant to the litigation before they were destroyed." *Leon v. IDX Sys.,*

22  *Corp.* 464 F.3d 951, 959 (9th Cir. 2006).  Here, Defendants knew that the documents were relevant but

23  allowed them to be destroyed.  The record demonstrates by clear and convincing evidence that

24  Defendants were, at best, reckless and grossly negligent in failing to locate and protect relevant

25  documents.  This level of fault is sufficient to warrant sanctions under both Rule 37 and the Court's

26

27         [3]Defendants also oppose the motion for sanctions by stating that, after Plaintiff filed this motion
    to compel, and "out of an abundance of caution" they searched a storage unit and found a copy of the
28  2003-2004 cooks log book and handbook.  Defendants' belated search and production of a couple of
    documents, however, in no way justifies their other failures.

inherent authority.  Sanctions under Rule 37 are warranted by Defendants' failure to comply with the Discovery Order in producing the relevant documents.  Because Defendants apparently made no effort to locate and protect the responsive documents, the record does not reflect the actual or suspected dates of destruction of the evidence that Plaintiff could have used to show that pork products were served on more than one occasion.  Defendants' destruction of relevant evidence is not a justification for failure to comply with a court order.  Defendants have not submitted any evidence that the relevant documents were destroyed prior to their notice of the lawsuit.  Accordingly, Defendants have not submitted any justification for the destruction of evidence or the failure to comply with the Discovery Order. Defendants have also not submitted any explanation for their failure to admit to the destruction until years after they allege they destroyed the documents.  Thus, the only remaining question is:  what is the least severe sanction that will cure the prejudice to Plaintiff.

### C.    Possible Sanctions for Spoliation

"Courts may sanction parties responsible for spoliation of evidence in three ways.  First, a court can instruct the jury that it may draw an inference adverse to the party or witness responsible for destroying the evidence.  Second, a court can exclude witness testimony proffered by the party responsible for destroying the evidence and based on the destroyed evidence.  Finally, a court may dismiss the claim of the party responsible for destroying the evidence."  *In re Napster, Inc. Copyright Litigation*, 462 F.Supp.2d 1060, 1066 (N.D. Cal. 2006) (citations omitted.)

#### 1.    Adverse Inference

An adverse inference is an instruction to the trier of fact that "evidence made unavailable by a party was unfavorable to that party."  *Nursing Home Pension Fund v. Oracle Corp.*, 254 F.R.D. 559, 563 (N.D.Cal. 2008).  As the Ninth Circuit has explained:

> [t]he adverse inference sanction is based on two rationales, one evidentiary and one not. The evidentiary rationale is nothing more than the common sense observation that a party who has notice that a document is relevant to litigation and who proceeds to destroy the document is more likely to have been threatened by the document than is a party in the same position who does not destroy the document. . . . The other rationale for the inference has to do with its prophylactic and punitive effects. Allowing the trier of fact to draw the inference presumably deters parties from destroying relevant evidence before it can be introduced at trial.

*Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991).

1   To decide whether to impose an adverse inference sanction based on spoliation, several

2   California district courts have adopted the Second Circuit's test requiring that a party seeking such an

3   instruction establish that: "(1) the party having control over the evidence had an obligation to preserve

4   it; (2) the records were destroyed with a culpable state of mind; and (3) the destroyed evidence was

5   relevant to the party's claim or defense." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d

6   99, 107 (2d Cir.2002) (followed by *Cyntegra, Inc. v. Idexx Laboratories, Inc.*, 2007 WL 5193736, *2+

7   (C.D. Cal. Sep 21, 2007; *In re Napster*, 462 F.Supp.2d 1060, 1078 (N.D. Cal.2006); *AmeriPride Svs,

8   Inc. v. Valley Indus. Svc., Inc* ., 2006 WL 2308442, at *5, n. 6 (E.D. Cal. Aug.9, 2006)).  The "culpable

9   state of mind" includes negligence.  *Residential Funding Corp.*, 306 F.3d at 108, *quoting Turner v.

10  Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 75 (S.D.N.Y.1991); *see also Unigard Sec. Ins. Co. v.

11  Lakewood Eng'r & Mfg. Corp.*, 982 F.2d 363, 368-69, n. 2 (9th Cir.1992)(affirming exclusion of

12  evidence for negligent destruction of evidence, specifically rejecting bad faith requirement); *Glover v.

13  BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993)( "Surely a finding of bad faith will suffice, but so will

14  simple notice of 'potential relevance to the litigation.'")(citation omitted.)

15      In this case, Defendants had control over the evidence and an obligation to preserve it.  Because

16  Defendants were on notice that the documents were relevant and have shown no effort to protect the

17  documents from destruction, the records were destroyed with a culpable state of mind.  While the Court

18  does not have sufficient evidence to find that the Defendants destroyed the evidence in bad faith, there is

19  clear and convincing evidence that the Defendants were "at fault" for recklessly and negligently

20  allowing the documents to be destroyed.  Finally, the destruction of this relevant evidence has

21  prejudiced Plaintiff.[4]

22      Moreover, the second justification, a punitive and prophylactic effect, is also particularly

23  appropriate here.  Defendants here are defendants in many lawsuits brought by prisoners and will be

24  defendants in even more lawsuits in the future.  An adverse inference is necessary here to protect other

26   [4]One example of the prejudice is this Court's Report and Recommendation that Defendants be granted summary judgment on the Eighth Amendment claim because one incident of serving pork did not rise to the level of a constitutional violation.  If Plaintiff had not forced Defendants to admit their destruction of documents, Plaintiff would have lost his Eighth Amendment claim merely because Defendants destroyed much of the evidence that Plaintiff could have used to show more incidents.

04cv2468-JLS (NLS)

1    litigants as well as to cure the prejudice to this Plaintiff.

2          Accordingly, the Court recommends that an adverse inference be applied at summary judgment

3    and at trial that the destroyed documents would have shown that pork was served a sufficient number of

4    times to rise to the level of a constitutional violation.

5                         2.    Exclusion of Evidence

6          The court's inherent authority to impose sanctions for the wrongful destruction of evidence

7    includes the power to exclude evidence that, given the spoliation, would "unfairly prejudice an opposing

8    party." *Unigard*, 982 F.2d at 368; *see also Glover*, 6 F.3d at 1329; *Nursing Home Pension Fund v.*

9    *Oracle Corp.*, 254 F.R.D. 559, 563 (N.D. Cal. Sep 02, 2008).  A party must not be allowed to use

10   evidence to overcome the adverse inference, if it would leave the opposing party without sufficient

11   means to respond.

12         Under Rule 37, a court may "prohibit[ ] the disobedient party from supporting or opposing

13   designated claims or defenses, or from introducing designated matters in evidence."  Fed.R.Civ.P.

14   37(b)(2)(A)(ii).  Exclusion of evidence, however, is not appropriate if the failure to disclose was either

15   substantially justified or harmless.  *Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101,

16   1105-06 (9th Cir.2001).  Here, Defendants have not proven that their failure to produce documents was

17   either substantially justified or harmless.

18         Without knowing what evidence Defendants might try to use to rebut the presumption, it is not

19   possible to know whether such evidence would have to be excluded to prevent undue prejudice.

20   Accordingly, the Court is not Recommending exclusion of any particular evidence at this time.

21   Defendants, however, are put on notice that evidence that unfairly prejudices Plaintiff, in light of the

22   Defendants' spoliation of evidence, will be subject to exclusion.

23                         3.    Dismissal

24         Dismissal is only warranted under the Court's inherent authority in extreme or extraordinary

25   circumstances, in response to abusive litigation practices and to insure the orderly administration of

26   justice.  *Halaco Eng'g. Co. v. Costle*, 843. F.2d 376, 381 (9th Cir. 1988).  Dismissal is only warranted

27   under Rule 37 when less drastic sanctions cannot correct the prejudice from the disobedient conduct.

28   Here, there are no extraordinary circumstances and default sanctions are not necessary to counteract the

prejudice from the destruction of documents.  Moreover, the defendants' fault is not so high as to warrant terminating sanctions.  There is no evidence that the documents were destroyed in order to prevent Plaintiff from receiving them.  Accordingly, although striking defendants' answer and entering default against them is a permissible sanction, this Court declines to recommend such an extreme sanction in this case.

**C**ONCLUSION

For the foregoing reasons,  this Court **RECOMMENDS** that:

       1.     Plaintiff's Motion to Compel Discovery and for Sanctions be GRANTED;

       2.     Defendants shall search one more time for any responsive documents and turn over any such documents no later than **August 21, 2009;** and

       3.     Plaintiff be given the benefit of an adverse inference that the documents destroyed by Defendants would have shown sufficient incidents of serving pork to rise to the level of a Constitutional violation; and evidence that unfairly prejudices Plaintiff in light of Defendants' spoliation of evidence be excluded.

This Report & Recommendation is submitted to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1).

**IT IS ORDERED** that no later than ***August 21, 2009***, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **September 11, 2009**.  The parties are advised that failure to file objections with the specified time may waive the right to raise those objections on appeal of the Court's order.  *Martinez v. Ylst*, 951 F2d 1153 (9th Cir. 1991).

//

//

//

//

//

04cv2468-JLS (NLS)

1       **IT IS FURTHER ORDERED** that Defense counsel shall contact Judge Stormes' chambers at

2   619-557-5391 within three days after this Order becomes final in order to set a status conference as soon

3   as practical.

4

5   DATED:  July 30, 2009

6

7                       Hon. Nita L. Stormes

8                       U.S. Magistrate Judge
                         United States District Court

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

04cv2468-JLS (NLS)